UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

           v.                       Crim. No. 3:16-CR-207 (AWT)

RAMON GOMEZ                   February 7, 2018

**GOVERNMENT'S RESPONSE TO**
***THE DAY*'S MOTION TO INTERVENE AND UNSEAL (REDACTED)**

The United States respectfully submits this response to The Day's Motion to Intervene and Unseal [doc. 74, filed Dec. 13, 2017] and its Supplemental Memorandum of Law in Support [doc. 98, filed Jan. 30, 2018], as well as the Defendant's Sealed Response [doc. ##, filed Jan. 5, 2018] and the Defendant's Response to Intervenor's Memorandum of Law [doc. ##, filed Feb. 5, 2018]. The Government's response was due on February 6, 2018.

The United States respectfully requests a one-day extension of time, *nunc pro tunc*, to file the present Response. Counsel for the Defendant and for the Intervenor have graciously consented to this request. This is the Government's first (and only) request for an extension of time.

I.    **Procedural Background**

On June 8, 2016, the Court issued a sealed complaint [doc. 1] charging the defendant with two criminal violations: possession with intent to distribute, and distribution of, heroin, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), and conspiracy to distribute heroin, in violation of 21 U.S.C. § 846. On June 28, 2016, upon his arrest, the defendant was brought for his initial appearance before the Court. *See* Minutes of June 28, 2016, hearing [doc. 7]. At that hearing, upon the Government's oral motion [doc. 6], the complaint was unsealed [doc. 7].

On November 17, 2016, the defendant pled guilty pursuant to a two-count information charging him with sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c), and possession with intent to distribute, and distribution of, heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

In anticipation of sentencing set for December 12, 2017, the defendant filed a motion to seal, accompanied by sealed memorandum, on November 29, 2017. *See* doc. 65, 66. The Court granted that motion to seal on November 30, 2017. *See* doc. 68. On December 4, 2017, the Government also filed a memorandum accompanied by a motion to seal. *See* doc. 67. The Court granted the Government's motion to seal on December 6, 2017. *See* doc. 69.

As a result of inadvertence, the Government submitted its memorandum and motion to seal through the Court's electronic filing system using the menu option "Motion to Seal" with an accompanying memorandum, unaware that its submission could be publicly accessed unless and until the Court granted the motion to seal. Apparently, during the intervening period between the filing of doc. 67 and the Court's granting of that motion to seal, a reporter for *The Day* publicly accessed that document on PACER. *See* doc. 76, Declaration of Karen Florin at 1 ¶ 4.

On December 12, 2017, the Court held a sentencing hearing in open court, which had been publicly noticed on the docket.   *See* doc. 70 (entered on December 8, 2017, containing the updated time for the hearing, and location in the South Courtroom of the Hartford court house); doc. 78 (sentencing minutes).   At the conclusion of the hearing, the Court sentenced the defendant primarily to 96 months on each count, to be served concurrently. *See* doc. 92 (written judgment).

On December 12, 2017, *The Day* published an article about the defendant's sentencing.

On December 13, 2017, a motion to intervene was filed by *The Day*, seeking to unseal documents 66 and 67. *See* doc. 74. The motion was accompanied by a memorandum of law and a supporting declaration. *See* docs. 75, 76. On December 20, 2017, the Court granted the motion to intervene and scheduled a hearing. *See* doc. 80.

On January 5, 2018, the defendant filed a sealed response to the motion to intervene and unseal. *See* doc. 91. At a hearing on January 8, 2018, the Court heard initially from the parties in open court. At the conclusion of that hearing, the parties agreed to submit a proposed protective order to allow counsel for *The Day* to view the sealed pleadings at issue in the case, subject to appropriate limitations on disclosure. On January 12, 2018, the parties made a joint motion [doc. 96] for such a protective order, which the Court granted four days later [doc. 97]. The parties then provided counsel for *The Day* with those sealed pleadings, subject to the protective order.

On January 30, 2018, *The Day* publicly filed a memorandum in support of its motion. *See* doc. 98. Later that day, the defendant filed a sealed motion [doc. 99] to seal *The Day*'s memorandum, which this Court granted that same day [doc. 100]. Both *The Day* and the defendant then filed replies regarding the sealing of *The Day*'s memorandum. *See* docs. 101, 102. On February 5, 2018, the defendant filed a response to the intervenor's memorandum. *See* doc. 102, accompanied the following day by a motion to seal, doc. 104.

The Government now respectfully submits the present memorandum.

II.     **Governing Law**

A.      **General Principles Regarding Access to Judicial Documents**

As the Court of Appeals for the Second Circuit has explained, "[f]ederal courts employ two related but distinct presumptions in favor of public access to court proceedings and records:

3

a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013).

Under the First Amendment test, the Second Circuit has identified "two types of reasoning" in determining whether certain documents fall into a class of "judicial documents" subject to a qualified right of public access. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004). The first approach draws on the Supreme Court's case law regarding the openness of proceedings, particularly in light of *Press-Enterprise Co. v. Superior Court (Press-Enterprise II)*, 478 U.S. 1 (1986). This first approach entails a "two-prong inquiry" that "has been summarized as requiring examination of both 'logic' and 'experience' in establishing the public's and press's qualified First Amendment right of access," *Hartford Courant*, 380 F.3d at 92:

> In cases dealing with the claim of a First Amendment right of access to criminal proceedings, our decisions have emphasized two complementary considerations. First, because a tradition of accessibility implies the favorable judgment of experience, we have considered whether the place and process have historically been open to the press and general public. . . . Second, in this setting the Court has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question.

*Hartford Courant*, 380 F.3d at 92 (quoting *Press-Enterprise II,* 478 U.S. at 8). The second approach views a "qualified right of access to judicial documents as derived from or a necessary corollary of the capacity to attend the relevant proceedings." *Hartford Courant*, 380 F.3d at 92 (citing *In re The New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987)). Regardless of which approach is followed, "the First Amendment right creates only a *presumptive* right of access," which "prevails unless it is overcome by 'specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve

4

that aim.'" *Newsday LLC*, 730 F.3d at 165 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006)).

There is also a common-law analysis for determining whether certain documents fall within the category of judicial documents subject to public access. The common-law question requires a court to first ascertain the weight of any presumption of access, and then to balance it against countervailing concerns. Unlike the First Amendment right, "the common law right attaches with different weight depending on two factors: (a) 'the role of the material at issue in the exercise of Article III judicial power' and (b) 'the resultant value of such information to those monitoring the federal courts.'" *Newsday,* 730 F.3d at 165 (quoting *United States v. Amodeo ("Amodeo II")*, 71 F.3d 1044, 1049 (2d Cir. 1995)). In assessing the weight to be given the presumption of access, "tradition" can be informative. *Amodeo II,* 71 F.3d at 1050. When documents "are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." *Id.* "In addition to the weight afforded to the presumptive right of access, the common law right is balanced against countervailing interests favoring secrecy." *Newsday*, 730 F.3d at 165. The D.C. Circuit has identified a number of factors that might serve as counterweights to a common-law right of access:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*United States v. Harris*, 204 F. Supp.3d 10, 16-17 (D.D.C. 2016) (quoting *EEOC v. National Children's Center, Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)).

5

Regardless of the test at issue, the Second Circuit has recognized the discretion vested in district courts to make case-specific determinations necessary for striking the appropriate balance, given a particular set of facts. *See Newsday,* 730 F.3d at 163 (reviewing decision to seal documents "for abuse of discretion," and noting that the appellate court will review the documents in question "with due consideration for the prerogative of the district court to administer the evidence before it").[1]  As the Supreme Court has explained in recognizing the common-law right of access to judicial documents, "[t]he few cases that have recognized such a right do agree that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 599 (1978).

In the District of Connecticut, the Local Rules also set forth standards for sealing documents:

> In light of the public's right of access to judicial documents, this Court has long had a local rule that prescribes the appropriate procedure for counsel in criminal cases to follow if they wish to file a document under seal. Local Criminal Rule 57 provides in relevant part that "[n]o judicial document shall be filed under seal, except upon entry of an order of the Court either acting *sua sponte* or specifically granting a request to seal that document," and "[a]ny such order sealing a judicial document shall include particularized findings demonstrating that sealing is supported by *clear and compelling reasons* and is *narrowly tailored* to serve those reasons." D. Conn. L. Crim. R. 57(b)(3) (emphasis added). Because of the basic requirements that sealing be supported not only by clear and compelling reasons but also that any sealing be narrowly tailored to serve those compelling reasons, the local rules further prescribe procedures for counsel to file a redacted public version and an unredacted sealed version of documents to be filed under seal. See D. Conn. L. Crim. R. 57(b)(4).

*United States v. Roy,* 2017 WL 2604250, at *2 (D. Conn. June 15, 2017) (Meyer, J.).

---

1. *See also Doe v. Lerner*, 688 Fed. Appx. 49 (2d Cir. 2017) (summary order) (applying the abuse-of-discretion standard of review).

**B.** **Principles Regarding Access to Documents Relating to Sentencing**

Using both the First Amendment and common-law approaches, courts have examined whether documents considered by the Court in connection with criminal sentencing proceedings are subject to public disclosure. The type of document may determine whether any presumptive right of access attaches.

The Second Circuit has not comprehensively addressed the question of which sorts of documents submitted to a district court in aid of sentencing fall within the scope of the First Amendment or common-law rights of presumptive public access. The weight of district court authority appears to hold that such documents, in general, constitute "judicial documents" subject to the presumptive right of public access. *See, e.g., Roy*, 2017 WL 2604250, at *1; *United States v. Litvak*, 2015 WL 328876, at *2 (D. Conn. Jan. 23, 2015) (Hall, J.); *United States v. Huntley*, 943 F.Supp.2d 383, 385-86 (E.D.N.Y. 2013); *United States v. Dare*, 568 F. Supp.2d 242, 244 (N.D.N.Y. 2008). Other Circuits have reached similar conclusions. *See, e.g., United States v. Kravetz*, 706 F.3d 47, 56-59 (1st Cir. 2013) (holding that sentencing memoranda and letters submitted on behalf of defendant are subject to public right of access; [REDACTED]).

Yet this analysis may depend on the specific nature of the document at issue. For example, the Second Circuit has long held that Presentence Reports are not the type of document that is presumptively subject to disclosure to third parties. *See United States v. Charmer Indus.*, 711 F.2d 1164 (2d Cir. 1983) (holding that "court should not release a presentence report to a third person unless that person has shown a compelling need for disclosure to meet the ends of justice"). Even though sentencing proceedings held in court are presumptively subject to the First Amendment and common-law rights of public access, "[c]ourts have generally held . . . that there

is no First Amendment right of access to pre-sentence reports." *United States v. Alcantara*, 396 F.3d 189, 197 n.6 (2d Cir. 2005);[2] *see also In re Morning Song Bird Food Litig.*, 831 F.3d 765, 773 (6th Cir. 2016) (collecting cases).

**C.     Principles Regarding Access to Documents Relating to [REDACTED]**

[REDACTED]

The following section deals with the particular arguments raised by the parties with respect to the two documents currently at issue.

**III.     Analysis**

There seem to be three primary issues in dispute, as between the intervenor's motion to unseal and the defendant's objections: (1) the appropriate legal standard; (2) the application of that standard to these facts; and (3) the adequacy of this Court's findings regarding sealing.

**A.     The Legal Standard**

As discussed in the previous section, the Government respectfully submits that the most appropriate mode of analysis seems to be whether, under the multi-factor balancing test used for the common-law right of access to documents, the Court should seal or unseal (in whole or in part) the two sentencing memoranda in question.

**B.     Application of the Common-Law Standard**

[REDACTED]

**C.     The Adequacy of the Court's Findings**

Finally, to the extent that the intervenor argues that this Court has not yet entered written findings under Local Rule 57 outlining the basis for any decision to seal documents in this case,

2. *See also Roe v. United States*, 428 Fed. Appx. 60, 67 (2d Cir. 2011) (summary order) (affirming, on abuse-of-discretion standard, district judge's issuance of permanent injunction against public dissemination of PSR).

the Government agrees that it would be appropriate for the Court to do so. To the extent that those findings reference matters that remain under seal, it would be appropriate for this Court to enter a redacted version of its findings publicly, with a sealed addendum that references any sealed matters.

IV.     **Conclusion**

For the reasons set forth above, the Government respectfully suggests that the

intervenor's motion to unseal be granted in part and denied in part.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/
WILLIAM J. NARDINI
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
157 Church Street, 25th Floor
New Haven, CT 06510
william.nardini@usdoj.gov
203-821-3700
Fax: 203-773-5373
Federal Bar No. ct16012

## <u>CERTIFICATION</u>

I hereby certify that on February 7, 2018, a copy of the foregoing was filed electronically under seal.

/s/
WILLIAM J. NARDINI
ASSISTANT U.S. ATTORNEY